The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



**/S/ RUSS KENDIG**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| | ) |
| MARK D. HANLIN, | ) CASE NO. 10-60275 |
| | ) |
| Debtor. | ) JUDGE RUSS KENDIG |
| | ) |
| | ) |
| | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT INTENDED FOR** |
| | ) **PUBLICATION)** |

Now before the Court is the United States Trustee's (hereafter "UST") motion to dismiss Debtors' case pursuant to 11 U.S.C. § 707(b)(1) and (3), filed May 11, 2010. UST alleges Debtor is not needy, thereby warranting dismissal of his case. Debtor disagrees.

The Court conducted an evidentiary hearing on September 21, 2010. Catherine Lowman, an analyst for the UST, and Debtor testified.

Jurisdiction is premised in 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The following Memorandum of Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. In rendering its decision, the Court has considered the testimony of witnesses and the exhibits admitted into evidence.

1

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

Following the evidentiary hearing, it appears this case is driven by primarily three items: Debtor's Schedule J shows $233.76 in monthly net income; Debtor claims $450.00 per month in transportation expenses, and Debtor's contributes $247.00 monthly to his 401(k). The premise of UST's argument is that the budget is excessive. UST also questioned Debtor's expenses for recreation ($200.00/month) and charitable contributions ($100.00/month).

Debtor is a fifty-eight year old senior support specialist in the J.M. Smucker Company ("Smucker's") IT department. He has been employed with Smucker's for six years, although he has only been a full-time employee for three years. Previously, he worked for the company as an independent contractor. He earns an annual gross salary of approximately $51,000.00, rendering him an above-median debtor, and his income is stable. Since he obtained the "senior" support status, this is the top salary for his position. His monthly net earnings are $2,874.54.

Debtor currently resides with his aged mother in a century home in the village of Beach City. He pays $550.00 per month in rent, which includes utilities. He testified that he does help with home maintenance and repairs. He is purchasing a 2007 Ford Mustang, his only vehicle. He drives 37 miles to work each way. He testified that there are no conveniences or amenities, like a grocery store, in Beach City, requiring trips to New Philadelphia or Massillon to shop for necessities, including groceries. At the time he filed his petition, Debtor was driving between his job in Orrville, the house in Beach City where he was living, and the Massillon nursing home where his mother temporarily resided. Thus, his daily commute was substantially in excess of 74 miles per day.

Debtor's filing was the culmination of factors. First, he divorced in 2008. His ex-wife filed bankruptcy and was discharged of all obligations on their joint debt. The marital house was the subject of a foreclosure action. Debtor's nonpayment of debt ultimately resulted in a wage garnishment, which Debtor testified was the straw that broke the camel's back.

According to Debtor, he intends to move closer to work, hopefully in the next month or two. This has been his plan since filing the bankruptcy case. Upon moving, his rent payment will likely remain in the $550.00 per month neighborhood, but he will add utility expenses to his budget. Upon relocating, he'll pay less in transportation expenses.

Debtor's has minimal assets, including a bank account which, at filing, had $150.00 in it. Other assets include household goods of $1,200.00, clothing valued at

2

$250.00 and a life insurance policy with no cash value. His retirement accounts total approximately $10,000.00. He is purchasing the 2007 Ford Mustang.

Debtor's testimony was credible. Ms. Lowman's testimony was generally credible, but the court discounts her testimony regarding fuel costs for Debtor. The calculations were unduly rigid and formulaic.

## LAW AND ANALYSIS

Section 707(b)(3) motions appear to be the new routine for the court. In the course of 2010, the court issued several section 707(b)(3) decisions, including In re LaBolt, Case No. 08-64428 (Bankr. N.D. Ohio January 13, 2010); In re Gilmore, Case No. 09-64893 (Bankr. N.D. Ohio June 8, 2010): In re Jackson, Case. No. 09-64920 (Bankr. N.D. Ohio September 17, 2010); In re McPhail, Case No. 10-61090 (Bankr. N.D. Ohio August 27, 2010). These opinions adequately outline the standards for dismissing a case as abusive. The court will not go to great lengths to repeat the legal framework for a 707(b)(3) analysis.

By agreement, the parties limit the inquiry in this case to whether there is a "want of need" by Debtor. A "needy" debtor is one whose "financial predicament warrants the discharge of his debts in exchange for liquidation of his assets." Behlke v. Eisen (In re Behlke, 358 F.3d 429,434 (6th Cir. 2004) (quoting In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989)). Identified considerations for determining whether a debtor is needy include whether a debtor has an

> ability to repay his debtors out of future earnings . . . whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expense can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

Krohn at 126. The court must look at the totality of the circumstances to determine if Debtor is needy. See Behlke, 358 F.3d 429, Krohn, 886 F.2d 123. In order to succeed on its motion, UST carries the burden of persuasion by a preponderance of the evidence. See In re Beckerman, 381 B.R. 841 (Bankr. E.D. Mich. 2008); In re Gonzalez, 378 B.R. 168 (Bankr. N.D. Ohio 2007) (citation omitted). For the reasons that follow, the court finds that UST failed to meet its burden.

One of the problems with this case is that the budget varies depending on whether you are looking at filing, at the present time, or in the future. With each time period, the

3

figures fluctuate as a result of changes in rent, transportation, and utility expenses. The court is convinced that the rent and transportation expenses listed at filing were accurate. Debtor's unusually high transportation costs were adequately explained. Debtor had a lengthy drive to work.[1] He was driving between Beach City and Massillon to visit his mother in the nursing home. He was driving between Beach City and Massillon or New Philadelphia for necessities like groceries. The accumulation of mileage at this rate requires more frequent oil changes and increases the wear and tear expenses on a vehicle, ultimately increasing the rate of replacement. The $450.00 figure includes all car expenses, including fuel, repair, maintenance, titling, and licensing, except the car payment and insurance. The court accepts the $450.00 figure as an accurate representation of Debtor's expenses as of the date of filing.

The question then must be focused on whether the $233.76 in disposable income demonstrates a lack of need. In this case, the court finds it does not because reality shows the figure to be lower than $233.76.

While Schedule I shows disposable income, the court cannot conclude it is accurate. First, Debtor testified to the inaccuracy of that figure, stating he does not have $200.00 left at the end of a month. To illustrate his point, he stated his budget is tight enough that he is buying new tires one tire at a time because that is the only way he can afford to purchase them. The court has no doubt as to the veracity of these statements.

UST challenged Debtor's $200.00 recreation expense. According to Debtor, he believes that this figure includes the $97.00 per month storage fee he incurs to store his furniture and personal belongings that he cannot use while living in his mother's home. According to Debtor, it may also include the expense he incurs for cigarettes when he resumed smoking a pack a day. At $47.00 per carton, Debtor spends nearly $150.00 per month on cigarettes alone. Between these two expenses alone, what Debtor classified as "recreation" amounts to $247.00 per month, without accounting for any actual recreation expenses.

Debtor's $100.00 charitable contribution budget also came under attack. While being examined, Debtor explained that Smucker's employees are strongly encouraged to participate in the United Way campaign, as well as other charitable giving. Debtor pledged $50.00 per month to the United Way, but stopped the deduction when the garnishment started. This year's campaign is now underway and Debtor indicated he will participate again, giving $50.00 per month. Other examples of monetary charitable giving in which Debtor participates include:

---

[1] As further illustration of Debtor's mileage, at filing, Debtor's Schedule B indicated his vehicle at 49,000 miles on it. At the hearing approximately eight months later, he testified that the car had 72,000 miles, or 23,000 miles in eight months.

4

- the purchase of a raffle ticket to support a charitable cause at a department golf outing
- a holiday "adopt a family" cause
- donations to a benefit to support an accident victim
- donations to sponsor families to the Cedar Point family picnic

The testimony was sufficient to convince the court that the expense was legitimate, on-going, and in the vicinity of $100.00 per month on average. UST failed to present sufficient evidence to suggest otherwise.

A great deal of time was spent addressing Debtor's expenses upon a move to his own apartment closer to work. It is undisputed that his transportation expenses will decrease. However, the trade off is that his utility expenses, and possibly rent, will increase. While Ms. Lowman attempted to calculate Debtor's future fuel costs, the court finds the testimony to be speculative and rigid. The premise of the calculations was that Debtor would need 22.2 gallons of fuel per month to drive to and from work, then doubling this figure to account for all other driving, with no allowance for repair or maintenance costs. The factual underpinnings of the methodology were dubious. It is not known when Debtor will move, how far he will be from work, how many trips to visit his mother will be required. Consequently, the court will not undertake an analysis of the unknowns, but will base its decision on existing facts.

Also notable is Debtor's age. He is fifty-eight. He has approximately $10,000.00 in retirement savings. He needs to be saving for retirement. Debtor has no disposable income, but if he had some minimal amount, the only meaningful repayment he could afford in a chapter 13 case would be funded by his future retirement needs.

## CONCLUSION

Based on the evidence before the court, UST failed to prove, by a preponderance of the evidence, Debtor does not need the benefit of a discharge. He does not have the ability to repay his debts out of future earnings because his expenses consume the bulk of his net income. While he would be eligible for a chapter 13 proceeding, based on Debtor's testimony, his income does not support a repayment plan. Looking at the totality of the circumstances, Debtor's financial predicament does not establish a basis for denying him the benefit of a discharge. The motion to dismiss will be denied.

An appropriate order will be entered reflecting the decision of the Court.

#  #  #

10-60275-rk    Doc 23    FILED 10/06/10    ENTERED 10/06/10 10:24:28    Page 5 of 6

## **SERVICE LIST**

Richard A Nicodemo
Nicodemo & Wilson
124 15th Street, N.W.
Canton, OH 44703

Scott R. Belhorn
Office of the US Trustee
Howard M. Metzenbaum U.S. Court House
201 Superior Avenue, Suite 441
Cleveland, OH 44114-1240